IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TOMMY O'BRYANT                                                        PLAINTIFF

VERSUS                                               CIVIL ACTION NO. 1:18-cv-00008-HSO-JCG

WALGREEN, CO., CBRE GROUP, INC.,
JOHN OR JANE DOES 1-10                                        DEFENDANTS

**MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION
TO [104] CBRE GROUP INC.'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, TOMMY O'BRYANT, by and through his attorneys of record, and would provide the Court with his Memorandum in Support of Response in Opposition to CBRE Group Inc.'s Motion for Summary Judgment [104], and in support thereof would show as follows:

**1. Introduction**

This action arises out of the Defendants' negligence. Walgreen Co. and CBRE Group Inc. ("CBRE") were aware of a high frequency of store-front crashes at Walgreen Co. locations giving them actual knowledge of a dangerous condition, which they failed to warn of or guard against. See *Redbox Automated Retail, LLC Table of Incidents*, attached as **Exhibit "A."** Plaintiff's injury was the foreseeable and predictable consequence of the Defendants' failures.

CBRE provides or provided facilities management services to Walgreen Co., which included maintaining sidewalks and repairing or coordinating repair of the stores after store-front crashes. See *Facilities Management Outsourcing Services Agreement and Annex 18*, attached as **Exhibit "B."** What degree of control CBRE exercised over the premises is a question of fact. Defendant seems to argue that the intent of the Facilities Management Outsourcing Agreement ("FMOA") should control this dispute, but the plain language of the contract indicates that CBRE

1

was responsible for the management of Walgreen Co. store locations, including the Biloxi store. *Id.* Therefore, CBRE was at least partially in control of the premises and owed a duty to Mr. O'Bryant.

## 2. Standard of Review

Summary judgment is appropriate only when the movant can demonstrate there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R. Civ. P. 56(c); M.R.Cv.P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S., at 251-252, 106 S. Ct. 2512.

A genuine issue exists where the evidence before the court is of such a nature that a jury could reasonably find in favor of the non-moving party, and whether a fact is material hinges on the substantive law at issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-54, 106 S.Ct. 2505, 2510, 2510-13, 91 L.Ed.2d 202 (1986). The nonmoving party is entitled to the benefit of any and all doubts regarding the facts, and all evidence (and all inferences therefrom) must be viewed in the light most favorable to the nonmoving party and against the movant. *Deville v. Marcantel,* 567 F. 3d 156, 163-164 (5th Cir. 2009).

In situations where there is doubt as to whether a genuine issue of material fact exists, a trial judge should err on the side of denying a motion for summary judgment and permitting full trial on the merits. *Todd v. First Baptist Church of West Point*, 993 So. 2d 827 (Miss. 2008). The trial court has the freedom to allow a case to continue when it has any doubt as to the wisdom of

terminating an action prior to a full trial. *Donald v. Reeves Transport Co. of Calhoun, Georgia*, 538 So.2d 1191 (Miss. 1989).

### 3. Applicable Law and Analysis

**A. CBRE exercised control over the sidewalk and parking lot at Walgreen Co. and owed a duty to keep the premises reasonably safe or warn of hidden dangers.**

Mississippi uses a three-step process in analyzing premises liability: "First we must determine whether the injured party was an invitee, licensee, or trespasser at the time of the injury. Next, we must determine what duty was owed to the injury party by the business owner/operator. Finally, we must determine whether that duty was breached." *Dickinson v. Vanderburg*, 141 So. 3d 455, 456 (Miss. Ct. App. 2014) (citing *Rod v. Home Depot USA Inc.*, 931 So. 2d 692, 694 (Miss. Ct. App. 2006)). It is undisputed that Mr. O'Bryant was an invitee at the Biloxi store location on the day of his injury. See *Deposition of Tommy O'Bryant* at 47-48, attached as **Exhibit "C."**

An owner, operator, or person in control of the premises owes an invitee the duty "to keep the premises in a reasonably safe condition or to warn the invitee of dangerous conditions, not readily apparent, which the owner or occupier knows of or should know of in the exercise of reasonable care." *Waller v. Dixieland Food Stores, Inc.*, 492 So. 2d 283, 285 (Miss. 1986); see also *Massey v. Tingle*, 867 So. 2d 235, 239 (Miss. 2004). These two duties – (1) to keep the premises reasonably safe and (2) to warn of hidden dangers – are separate, and the breach of either duty supports a claim of negligence. See *Mayfield v. The Hairbender*, 903 So. 2d 733, 732-733 (Miss. 2005). "The party in the best position to eliminate a dangerous condition should be burdened with that responsibility." *Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994). The question of whether an owner, occupier, or person in control of the premises was negligent for

3

failure to repair an alleged dangerous condition is ordinarily for the jury to decide. *Mayfield*, 903 So. 2d at 738.

"The duty to maintain a premises in a reasonable safe condition rests on what a reasonably prudent property owner would do. Were there thousands of similar incidents on the steps it would be obvious that a reasonably prudent property owner would take corrective actions. . . In my view the number of prior incidents in this case falls squarely within the zone that must be left to a jury. *Vivians v. Baptist Healthplex*, 234 So.3d 304, 309-10 (Miss. 2017) (concurrence) (emphasis added).

Defendant, CBRE, provides this Court with one citation to argue that it owed Plaintiff no duty as a matter of law. However, *Anderson v. B.H. Acquisition, Inc*., 771 So. 2d 914, 918 (Miss. 2000) does not support this proposition. *Anderson* was a slip and fall case that occurred outside of a hotel; the plaintiff fell while boarding a shuttle bus to Treasure Bay Casino. *Id*. at 916. In analyzing the claim, the Mississippi Supreme Court considered the constructive knowledge of B.H. Acquisition as to a dangerous condition – oil on the driveway – and determined that the lower court erred in granting a directed verdict in favor of B.H Acquisition. *Id*. at 918-919. "The jury should have been allowed to determine whether B.H. Acquisition either created the dangerous condition or had actual or constructive knowledge that the condition existed on the date of the incident." *Id*. at 919. *Anderson* stands for the proposition that a business' actual or constructive knowledge of a dangerous condition is a question of fact for the jury.

CBRE states, "Perhaps the most important undisputed fact is that CBRE did not own, manage or otherwise control the parking lot or sidewalk at the subject location." [105]. Plaintiff vigorously disputes this statement, as CBRE is well aware. CBRE did exercise control or

management over the parking lot and sidewalk as set out in the FMOSA. See **Exhibit "B"**; see also *infra* Section D. This represents a disputed question of material fact.

In *Wilson v. Allday*, 487 So. 2d 793 (Miss. 1986), the Mississippi Supreme Court considered a similar relationship as that between CBRE, Walgreen Co., and third parties. A grocery store, National Food Store, leased its building from Chrisler Properties. *Id*. at 794. Part of their lease agreement provided, "Lessor agrees to maintain, light, and remove snow from all parking area." *Id*. at 795. The plaintiff suffered a slip and fall in the parking lot of National Food Store. *Id*. A few months prior, another patron had fallen in the parking lot under similar circumstances and Chrisler Properties assumed responsibility for repairing the parking lot. *Id*. The plaintiff filed suit against National Food Store, Chrisler Properties, and the store manager. *Id*. The Mississippi Supreme Court considered the liability between National Food Store and Chrisler Properties to a third party. The court began with the proposition that the owner, occupant, or person in charge of the premises owes, to an invitee, a duty to keep the premises in a reasonably safe condition or warn of a dangerous condition that is not readily apparent. *Id*. (citing *Downs v. Corder*, 377 So. 2d 603 (Miss. 1979)). The Court then explained that the lessor (Chrisler Properties) had assumed a duty to maintain the property by contractual agreement. *Id*. at 796 (without the contractual agreement, no duty existed in Mississippi law) (citing *Ford v. Pythian Bondholders*, 78 So.2d 743 (Miss. 1955)). Then the court considered National Food Store's responsibility finding that when a tenant has control and possession of a portion of the premises, he is under the duty of keeping his portion of the premises in repair and he will be liable for injuries resulting from its unsafe condition to a person lawfully thereon. *Id*. at 796-797. (citing 52 C.J.S. Landlord & Tenant § 434). In determining that both parties owed a duty the court stated, "[t]he duty of care applies even though the landlord may also have some control over the particular

5

facility and is also liable for the injury." *Id*. 797. Whether there was a breach of this duty is a question of fact. *Id*.

In *Wilson*, the Mississippi Supreme Court relied on the reasoning in *Jackson v. K-Mart Corp*., 182 N.J. Super. 645, 442 A. 2d 1087 (1981). In *Jackson*, K-Mart's sidewalk was maintained by another company. *Id*. at 647. The issue in that case was K-Mart's attempt to escape liability as a tenant – neither an owner or contractually bound to maintain the sidewalk. *Id*. The court recognized that an agreement to repair or maintain cannot absolve a tenant from liability to a third party, but specifically noted that the lease fixed the obligation for maintenance upon the lessor. See *id*.

Here, CBRE is in the position of the lessor – not because it leased the land upon which the Biloxi Walgreens was built – but because it voluntarily assumed the duty to maintain the sidewalks by contractual agreement, just as the lessors in *Wilson* and *Jackson*. Further, CBRE was in exclusive control of sidewalk maintenance by contractual agreement. See **Exhibit "B'**; see also *infra* Section D. Mr. O'Bryant had a reasonable expectation of safety on the path of egress into the store. *Wilson*, 487 So. 2d at 798. CBRE was contractually bound to maintain the sidewalk and notify Walgreen Co. of any "hazardous condition" in the parking lot or on the sidewalk. See FMOSA, Annex 18-5.2.1, attached as **Exhibits "B."** Therefore, not only was CBRE in control of the sidewalk upon which Mr. O'Bryant was injured, it was contractually bound to maintain that sidewalk. CBRE had a duty to keep the premises in a reasonably safe condition or to warn Mr. O'Bryant of dangerous conditions. See *Waller v. Dixieland Food Stores, Inc*., 492 So. 2d 283, 285 (Miss. 1986). Whether CBRE breached this duty is a question of fact for the jury to determine.

The Mississippi Supreme Court has stated that a contractual relationship between a premise owner and a third party can create a duty to warn of dangerous conditions. *Jones v. James Reeves*

*Constr.*, 701 So.2d 774, 784-786 (Miss. 1997). The Court recognized that the third party, an architect, did not contract to supervise the construction or maintenance in *Jones*. *Id.* at 786. But, the Court went out of its way to explain that *when a third party does contract for services, such as maintenance, a duty exists where a third party knows of an unsafe condition* or conditions. *Id.* (adopting *Young v. Easter Engineering & Elevator Co., Inc.*, 381 Pa. Super. 428, 554 A.2d 77 (Pa. Super 1989) (imposing a duty to warn when you contractual undertake a duty to supervise)). It is a question for the jury as to whether the third party's decision not to warn of the unsafe condition was reasonable under the circumstances. *Id.* (citing *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (Kan. 1983)). "Unless the architect has undertaken by conduct or contract to supervise a construction project, he is under no duty to notify or warn workers or employees of the contractor or subcontractor of hazardous conditions on the construction site." *Id.*

Similarly, CBRE has undertaken a duty to not only supervise, but to maintain the premises and to advise Walgreens of hazardous conditions on the premises. See *infra*, Section D; see also FMOSA, Annex 18-5.2.1, attached as **Exhibits "B."**

**B. CBRE owed Plaintiff a duty, and Plaintiff may recover for a breach of that duty.**

Defendant, CBRE, next argues that Plaintiff's general negligence claim must fail because (1) CBRE owed Plaintiff no duty and (2) Plaintiff does not have standing to assert a breach of contract claim between Walgreen Co. and CBRE. Both arguments must fail.

As discussed above, Plaintiff asserts that CBRE owed Plaintiff a duty to provide a safe path of egress into the store because CBRE was contractually bound to maintain the sidewalk, had exclusive control over the sidewalk's maintenance, and was bound to keep the sidewalk clear of "hazardous conditions." See FMOSA, Annex 18-5.2.1, attached as **Exhibits "B."** See also *infra*,

7

Section D. This represents a plain language reading of the contract between CBRE and Walgreens. See *id*.

> The Restatement of Torts, Second, §324A (1965) states:
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> > (c) the harm is suffered because of reliance of the other or the third person undertaking.

*Id*. The Second Restatement of Torts has been adopted by at least four Courts interpreting Mississippi law. (See *Freeman v. Flur Global Servs. Inc.*, 2006 U.S. Dist. LEXIS 73320 (S.D. Miss. Oct. 6, 2006); *Tillman v. Travelers Indemnity Co.*, 506 F.2d 917 (5th Cir. 1975); *Stacy v. Aetna Casualty & Surety Co.*, 484 F.2d 289, 292 (5th Cir. 1973); and *Canipe v. National Loss Control Service Corp.*, 736 F.2d 1055, 1061 (5th Cir. 1984)).

In *Freeman v. Flur Global Servs. Inc.*, the plaintiff was working for an independent contractor of Chevron to sample and test manufactured petroleum coke. 2006 U.S. Dist. 73320 at *2. Flur Global Services Inc. was a subcontractor at the Chevron refinery facility in Pascagoula and contracted to provide cleaning and preventative maintenance in certain areas at the facility. *Id.* The plaintiff was injured as a result of poorly lighted stairway and other hazards from a lack of cleaning and maintenance. *Id.* The plaintiff sued Flur Global for negligence in the manner in which it executed its contractual obligations to clean and maintain the stairs and stairway. *Id.* The district court held that even though Flur Global was not the premise owner, Chevron delegated at least some of its duties to Flur Global. *Id.* at 6. The delegated duty to provide a safe place for subcontractors to work, did not absolve Chevron of its duty, but did create a question of fact as to

8

Flur Global's responsibility. *Id.* at 6. In applying The Restatement Second of Torts §324, the Fifth Circuit explained:

> In our opinion, if an independent contractor is guilty of negligence in performing his work in such a way that it could reasonably be foreseen that the owner or third parties would probably sustain personal injuries or property damage as a result of the negligent condition, then the independent contractor should not, as a matter of law, be discharged merely because his work has been accepted and delivered to the owner.

*Canipe v. National Loss Control Serv. Corp.*, 736 F. 2d 1055, 1060 (quoting *Johnson v. Oman Construction Co.,* 519 S.W.2d 782, 788 (Tenn. 1975)). CBRE contracted with Walgreen, Co. to perform certain duties in the FMOSA – maintain the sidewalks, maintain the parking area, and inform Walgreen, Co. of hazardous conditions. CBRE was contractually bound to maintain the sidewalk in a reasonably safe condition and notify Walgreen Co. of any "hazardous conditions" in the parking lot or on the sidewalk. See FMOSA, Annex 18-5.2.1, attached as **Exhibits "B."** In his discovery requests, Plaintiff asked for any documentation or correspondence from CBRE to Walgreen Co. providing notice of the hazardous condition on the sidewalk at its stores. See Plaintiff's First Request for Production of Documents, Requests No. 6, 12, 21, and 25, attached as **Exhibit "D."** To date, CBRE has provided no such documentation. See CBRE's Response to Requests for Production, Supplemental Response to Requests for Production, and Second Supplemental Response to Requests for Production, attached as **Exhibit "E."** Therefore, CBRE breached its duty under the FMOSA to provide Walgreen Co. with notice of a hazardous condition.

Further, there is no immunity for third-party contractors in Mississippi. In *Howell v. Equip., Inc.,* the plaintiff sued a lift manufacturer (JLG Industries, Inc.) for negligence and the distributor (Equipment, Inc.) for negligent maintenance. 170 So.3d 592, 593 (Miss. Ct. App. 2014). A jury rendered a verdict in favor of the defendants. *Id.* at 595. The plaintiff appealed arguing that he was entitled to a JNOV on the issue of negligent maintenance. *Id.* at 597. The trial

9

court determined that the issue of whether a third-party contractor was required to maintain the lift was a jury question. *Id.* In fact, in *Howell*, there was no formal contract between the business and the third-party defendant, Equipment, Inc. *Id.* at 597-98. In analyzing the issues of superseding cause, the Court of Appeals stated, "In cases involving issue of an intervening cause, . . . **the original actor will not be absolved** of liability because of a supervening cause if his negligence put in motion the agency by or through which injuries were inflicted." *Id.* at 599-600 (citing *M&M Pipe & Pressure Vessel Fabricators, Inc. v. Roberts*, 531 So.2d 615, 618 (Miss. 1988) (citation omitted) (emphasis added).

Here, CBRE is the agent and Walgreen Co. is the principle. While Walgreen Co. may be the original actor, who put in motion CBRE's agency through which Mr. O'Bryant's injuries were inflicted, CBRE is the party whose actions were actively negligent. CBRE had a duty to maintain the sidewalk in a reasonably safe condition and failed to do so. CBRE may very well have an indemnity action against Walgreen Co., but that is not Plaintiff's concern. It is alleged that CBRE negligently maintained the sidewalk and failed to alert Walgreen Co. of a hazardous condition which, in part, caused Mr. O'Bryant's catastrophic injury, resulting in this lawsuit.

Similarly, in *Adams v. Hicks*, an employer attempted to escape liability for his horse being released from an enclosure, because the employer did not release the horse himself. 178 So. 484 (Miss. 1938). The horse injured the plaintiff, Mr. Hicks. The Mississippi Supreme Court held that the employer could not escape liability, because he had a nondelegable duty. *Id.* at 486. The Court does not grant immunity to the individual who released the horses negligently, but simply holds that the employer was ultimately responsible, as if he had done it himself. *Id.* The Court held that the employer had control of the system and was therefore responsible. *Id.* at 485-86.

Walgreen Co. had control of this system, but that does not absolve CBRE of its responsibility to maintain the sidewalks in reasonably safe condition.

In *Atl. Cost Dev. Corp. v. Napoleon Steel Contr.*, Napoleon was attempting to seek indemnification from Atlantic, as a result of being sued by one of Atlantic's employees. 385 So.2d 676, 679 (Fla. App. Ct. 1980). Atlantic defended on the premise that Napoleon had a nondelegable duty. *Id*. at 678-79. The jury returned a verdict against Atlantic. *Id.* at 678. Atlantic appealed the decision, arguing that Napoleon had a nondelegable duty to provide a safe workspace around the crane. *Id.* at 678-79. The Florida Appellate Division denied the appeal and affirmed the jury verdict, essentially endorsing the Plaintiffs' theory in this case - that a nondelegable duty for the employer does not absolve a tortfeasor from liability. While CBRE may have an indemnity case against Walgreen Co., it is not immune from suit.

In support of its argument for summary judgment on Plaintiff's general negligence claim, CBRE relies on a single case, *Porter v. Grand Casino of Miss., Inc*., 181 So. 3d 980 (Miss. 2016). But *Porter* does little more than set out the elements for a negligence claim – duty, breach, causation, and damages. *Id*. at 985. In *Porter*, the plaintiff's home was destroyed during Hurricane Katrina when the Grand Casino barge broke lose of its mooring and struck the plaintiff's house. *Id*. at 982. After discussing the interpretation of State Farm's insurance policy, the court goes on to affirm the grant of summary judgment in favor of the Grand Casino. *Id*. 983-986. Grand Casino provided affidavits from two experts showing that it had exceeded safety regulations, and Porter provided no evidence that a fifteen foot storm surge was foreseeable. *Id*. at 985-986. CBRE has provided no expert affidavits to suggest it met the standard of care, in fact, CBRE denies that it was under any duty. Further, Plaintiff has evidence of foreseeability. Pursuant to Plaintiff's Subpoena Duces Tecum, Redbox Automated Retail, LLC produced a spreadsheet documenting

197 vehicle strikes into Redbox kiosks at Walgreen Co. locations prior to Plaintiff's injury. See Redbox Table of Incidents, attached as **Exhibit "A."** Therefore, *Porter* is inapplicable.

**C. The Second Amended FMOSA does not remove CBRE's responsibility for Walgreen Co. stores.**

Despite CBRE's representations to this Court, the Second Amendment does not extinguish CBRE's duties to perform work on the exterior of Walgreen Co. locations. Notably, CBRE has failed to point this court to a quote, a paragraph, or any contract language to support its assertion. The Second Amendment recites that CBRE and Walgreen Co. will "negotiate in good faith in order to transfer to Walgreen certain portions of the scope of services under the FMOSA." See Second Amendment to FMOSA, Section 2.1, attached as **Exhibit "F."** Section 2.1 explains that the specific services to be transferred will be determined at a later date and codified in a separate agreement, the "Scope Transfer." *Id*. Section 2.2 explains that the Scope Transfer will be conducted pursuant to a written "Transition Plan." *Id*. at Section 2.2. Neither the Scope Transfer nor the Transition Plan were attached to the Second Amendment produced as Defendant's Exhibit F. Therefore, neither Plaintiff nor this Court can know what services were transferred back to Walgreen Co. from CBRE. Further, neither Plaintiff nor this Court can know when that transfer of services occurred. "The parties acknowledge and agree that the timing and completion of the Scope Transfer will be dependent upon each Party diligently and timely fulfilling its responsibilities under the Transition Plan." *Id*. at Section 2.3. There is no evidence in the record as to what services were transferred or when that transfer occurred.

Instead, CBRE has provided this Court with an affidavit that simply states "CBRE was responsible for providing services to Walgreens such as HVAC, plumbing, and light carpentry work when requested by Walgreens… CBRE did not perform repair or maintenance work outside

12

the building." This affidavit does not provide effective dates. It does not detail what services were transferred back to Walgreen Co. Further, the credibility of this affidavit is called into question by CBRE's own records showing that it did, in fact, manage the repair of the Biloxi Walgreens after Mr. O'Bryant's injury and the prior store-front crash on July 7, 2014. See CBRE's Second Supplemental Response to Interrogatories, attached as **Exhibit "G."** What degree of control CBRE exercised over the premises is a disputed question of material fact.

Further, Plaintiff does not claim that Defendants' negligence occurred on February 27, 2015 when Mr. O'Bryant was injured. Plaintiff claims that Defendants were negligent in the years prior to Mr. O'Bryant's injury because they were aware of a dangerous condition - knew of the frequency with which store front crashes occurred at Walgreen Co. stores - and failed to remedy or mitigate that danger. CBRE failed to warn third parties of the dangerous condition on the sidewalk. Therefore, even assuming *arguendo* that the Second Amendment to the FMOSA had relieved CBRE of responsibility for certain services at the time of the wreck, that fact would not relieve CBRE of its duty to remedy a dangerous condition in the years prior. Put simply, the active negligence of the defendants occurred in the years before the Second Amendment to the FMOSA.

**D. CBRE owed Plaintiff a duty pursuant to the FMOSA.**

The FMOSA provides that since May 13, 2011, CBRE undertook to provide "efficient management of operations" for Walgreen Co. See FMOSA Section 2, attached as **Exhibit "B."** Section 4.1(a) states that CBRE will provide the services listed in Annex 18.5. See *Id*. at 000006. Annex 18.2 sets out CBRE's duty to maintain exterior walls and structure. See Annex 18, attached as **Exhibit "B."** Annex 18.5 sets out CBRE's duty to maintain the pavement and outdoor structures. *Id*. at 000293-000294. Annex 18.5-2.1 specifically includes "sidewalks, parking lots, and cement barriers" in CBRE's duty to maintain the pavement and outdoor structures. *Id*. at 294-

13

295. Most telling, Section 17.12 of the FMOSA states "Service Provider has the sole obligation to supervise, manage, contract, direct, procure, perform…all work to be performed by Service Provider under this agreement." See "**Exhibit B**" at 000078. Therefore, CBRE did exercise supervisory or managerial control over the sidewalks, parking lots, and cement barriers.

CBRE also had an "Obligation to Improve" and an "Obligation to Propose" under Section 4.2 of FMOSA. *Id*. at 000007-000008. These duties required CBRE to "introduce and recommend Service Improvements … to ensure that it keeps pace with advancements or improvements in the marketplace consistent with industry best practices." *Id*. at 000007. These duties also required CBRE to "identify and propose" any process likely to "improve the efficiency and effectiveness of the Services… result in cost savings… enhance Walgreen's ability to conduct its business and service its customers." *Id.* at 000008. A plain language reading of Section 4.2 leaves one with the inescapable conclusion that CBRE did have a duty to recommend improvements, identify best practices, and propose new methods to enhance customer service.

Plaintiff has not misunderstood or mischaracterized the language of this agreement. "The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards." *Cherry v. Anthony, Fibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987). Defendant argues the "unmistakable intent" of the contract, but the intent of the drafter cannot vary the terms of a written agreement. See *Provident Life & Accident Ins. Co., v. Goel*, 274 F. 3d 984, 992 (5th Cir. 2001) ("court must effect a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties"). Parole evidence is inadmissible to prove the terms of a written contract. *Id*. (citing *Cherry*, 501 So. 2d at 419). It is basic contract law that one does not go outside the four corners of the document unless a contract is ambiguous. Keith A. Rowley, CONTRACT CONSTRUCTION AND INTERPRETATION: FROM THE

"Four Corners" to Parole Evidence (And Everything in Between), 69 Miss. L.J. 73, 181 (1999) (quoting *Krebs v. Strange*, 419 So. 2d 178, 181 (Miss. 1982)). CBRE is bound by the language of its agreement – not its "unmistakable intent."

As made clear in §324A of the Restatement (Second) of Torts and by the *Canipe* Court, "if an independent contractor is guilty of negligence in performing his work in such a way that it could reasonably be foreseen that the owner or third parties would probably sustain personal injuries or property damage as a result of the negligent condition," the negligent actor is responsible for the harm caused. 736 So.2d at 1060-61. The *Canipe* Court went on to state "[W]e have found no state decision that runs counter to the principle of section 324A." *Id*. at 1060.

The Mississippi Supreme Court has also found that when one contractually undertakes a duty, it is liable to third parties that suffer injuries as a result of the breach of the duties. *Rein v. Benchmark Constr. Co.*, 865 So.2d 1134, 1148 (Miss. 2004) (reversing a grant of summary judgment against contractor who contracted to provide "ant bed control" with a nursing home facility, when a patient or customer of the facility was attacked and killed from ants). The *Rein* Court held the contract between the exterminator and the nursing home that the exterminator would provide "ant bed control" by its own express terms created a duty to inspect and treat for ant beds. *Id.* The *Rein* Court held the scope of the duty is a proper one for the trier of fact. *Id.* And the foreseeability of the injuries is also a jury question. *Id.* Thus, the contract between CBRE and Walgreen, Co. created a duty for CBRE to Walgreen, Co. customers, such as Tommy O'Bryant.

## CONCLUSION

Plaintiff has established that CBRE was in partial control of the Walgreen Co. premises and owed a duty to maintain the sidewalks and parking lot in a reasonably safe condition or warn of hidden dangers. Plaintiff has also demonstrated that CBRE was under a contractual duty to

15

maintain the sidewalks and parking lot and notify of any hazardous conditions on the property. Further, Plaintiff has demonstrated that his injury was foreseeable given the frequency of storefront crashes at Walgreen Co. locations. Viewing all evidence in the light most favorable to the Plaintiff, CBRE cannot demonstrate that no genuine issue of material fact exists or that CBRE is entitled to judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests that the Court deny Defendant, CBRE's, Motion for Summary Judgment.

DATE: October 16, 2018.

Respectfully submitted,
**TOMMY O'BRYANT**


BY: __*s/Courtney P. Wilson*____
    COURTNEY P. WILSON (MSB # 103531)
    Counsel for Plaintiff

CERTIFICATE OF SERVICE

I, Courtney P. Wilson, do hereby certify that I electronically filed the above and foregoing *Memorandum in Support of Plaintiff's Response in Opposition to CBRE's Motion for Summary Judgment* with the Clerk of the Court utilizing the ECF system, which provides notification of said filing to the following:

*Counsel for Defendant, Walgreen, Co.*:
Patrick R. Buchanan
Brown Buchanan, P.A.
Post Office Box 1377
Biloxi, MS 39533-1377
Mr. Buchanan: mailb@brownbuchanan.com

*Counsel for CBRE Group, Inc.*:
Edward Taylor
Christopher H. Murray
Daniel, Coker, Horton & Bell P.A.
Post Office Box 416
Gulfport, MS 392-0416
Mr. Taylor: etaylor@danielcoker.com
Mr. Murray: cmurray@danielcoker.com

SO CERTIFIED on this the 16th day of October, 2018.

*s/Courtney P. Wilson*
COURTNEY P. WILSON

DOUGLAS L. TYNES, JR. (MSB # 101921)
COURTNEY P. WILSON (MSB # 103531)
Tynes Law Firm, P.A.
525 Krebs Avenue (39567)
P.O. Drawer 966
Pascagoula, MS 39568-0966
(228) 769-7736 Telephone
(228) 769-8466 Facsimile
Mr. Tynes: monte@tyneslawfirm.com
Ms. Wilson: courtney@tyneslawfirm.com